IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JESSICA ATAYDE and JOHNNY PIPPEN,

     Plaintiffs,

v.                                        Civ. No. 21-1131 KG/DLM

CHRISTINE WORMUTH,
*Secretary of the U.S. Army,*

     Defendant.

<u>MEMORANDUM OPINION AND ORDER</u>

This matter comes before the Court on Plaintiffs' Opposed Motion to Lift Stay, File

Supplemental Complaint, and Set Scheduling Deadlines, (Doc. 95), filed October 25, 2024.

Defendant filed its Response, (Doc. 98), November 8, 2024, and Plaintiffs did not file a reply.

Having considered the briefing and applicable caselaw, the Court grants in part and denies in part

Plaintiffs' Motion.

    *I.*    *Background*

On November 29, 2021, Plaintiffs Jessica Atayde and Johnny Pippen filed their

Complaint under Title VII of the Civil Rights Act based on allegations of discrimination,

retaliation, and a hostile work environment.  (Doc. 1) at 1.  On April 25, 2024, the Court stayed

the case through October 25, 2024, and set the deadline for dispositive motions to November 25,

2024.  (Doc. 94).[1]  The Court also set the deadline to move to amend Plaintiffs' Complaint to

November 25, 2024.  *Id.*  Now, Plaintiffs move to supplement their Complaint to add factual

---

[1] See Judge Martinez's Report and Recommendations, (Doc. 83), for a complete synopsis of the
procedural history of this case. (Doc. 83) at 1–4.

events and adverse actions to their existing Title VII claims.  (Doc. 95) at 5.

    A.  *Proposed Supplemental Complaint*

In sixteen pages, Plaintiffs add facts that took place before and after their original Complaint was filed.  The proposed Supplemental Complaint lists additional protected activities that each plaintiff participated from 2020–2023.  (Doc. 95-2) at 10–11, 14–15.  The protected activities include filing this lawsuit, testifying, and asking other witnesses to testify in support of their claims, all of which led to retaliation in the form of race discrimination and denying Plaintiffs promotions and pay increases.  *Id.*  According to the proposed Supplemental Complaint, both Plaintiffs experienced a hostile work environment as a result of filing this lawsuit.  *Id.* at 13–15, 21–25.

As another instance of alleged retaliation, Plaintiff Atayde was investigated for "taking excessive breaks in the EEO office" and accused of marital infidelity.  *Id.* at 12–13.  Plaintiff Atayde also alleges that she was subjected to a hostile work environment because of this lawsuit which ultimately led to her decision to terminate her employment.  *Id.* at 13.  Plaintiff Atayde considered her decision to leave the Equal Employment Opportunity (EEO) office as a constructive discharge because the work environment "impacted [her] ability to perform her job."  *Id.* at 14.

After filing the lawsuit, Plaintiff Pippen was allegedly subjected to unjustified investigations as well.  *Id.* at 19.  From 2023–2024, Pippen's security clearance was investigated, and the alleged purpose of the investigation was to "use the security clearance process" as a "weapon to try to fire Mr. Pippen" despite the fact that his job did not require any security clearance.  *Id.*  Pippen was also investigated for mishandling a sexual harassment claim which ultimately led to his termination.  *Id.* at 20.  According to the proposed Supplemental Complaint,

the "reasons for the proposed removal from service were false and baseless" and did not support termination. *Id.*

II.     *Analysis*

The Federal Rules of Civil Procedure provide the court discretion to permit a party to supplement a complaint to include "any transaction, occurrence, or event that happened after the date of the [complaint]." Fed. R. Civ. P. 15(d); *Walker v. United Parcel Serv., Inc.*, 240 F.3d 1268, 1278 (10th Cir. 2001) ("Rule 15(d) gives trial courts broad discretion to permit a party to serve a supplemental pleading setting forth post-complaint" facts). "Supplemental pleadings are thus appropriate to 'set forth new facts in order to update [an] earlier pleading.'" *Carter v. Bigelow*, 787 F.3d 1269, 1278 (10th Cir. 2015) (citation omitted).

Authorization to grant a motion to supplement a pleading "should be liberally granted unless good reason exists for denying leave." *Walker*, 240 F.3d at 1278 (citation omitted). A motion to supplement or amend should be denied when there is "a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 (10th Cir. 2010) (citation omitted). This Court recognizes that such a discretionary approach to considering motions to supplement "fosters a full adjudication of the merits of the parties' disputes within a single comprehensive proceeding." *First Savings Bank, F.S.B. v. U.S. Bancorp*, 184 F.R.D. 363, 368 (D. Kan. 1998) (citation omitted).

Defendant argues Plaintiffs' Motion should be denied because the amendments are untimely, unduly prejudicial, and the claims are futile. (Doc. 98) at 1. The Court addresses Defendant's arguments below.

3

A. *Timeliness*

To begin, Defendant argues certain facts in the proposed Supplemental Complaint occurred before this case was filed and therefore should not be added because those additions are untimely. (Doc. 98) at 9. The Court agrees and will not allow supplementation to the extent the proposed Supplemental Complaint alleges facts which occurred before November 29, 2021. *See* (Doc. 95-1) at 11, ¶46; 15, ¶¶ 71–74; 21–22, ¶¶ 118–126.

Next, Defendant argues, generally, that the proposed Supplemental Complaint is untimely because it comes after the Court's deadlines for Plaintiffs to move to amend in 2022 and 2023. (Doc. 98) at 9. The Court, however, extended the deadline until November 25, 2024, in its Summary Order entered April 25, 2024. (Doc. 94). On October 25, 2024, Plaintiffs filed their Motion to Supplement, a month before the Court's deadline. (Doc. 95). Thus, the Court does not find Plaintiffs' Motion to Supplement untimely.

B. *Futility*

As an initial matter, the Court addresses Defendant's reliance on declarations to support her proposed undisputed material facts (UMFs). (Doc. 98) at 2–6. "[A]t the summary judgment stage, "'credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" *Jones v. Barnhart*, 349 F.3d 1260, 1265 (10th Cir. 2003) (quoting *Foster v. Alliedsignal, Inc.*, 293 F.3d 1187, 1195 (10th Cir. 2002)). Thus, the Court refuses to make credibility determinations and will not consider Defendant's UMFs that rely on declarations. Moreover, with judicial economy in mind, this Court exercises its discretion in declining to engage in a detailed futility analysis in the context of this instant motion. *See Fuller v. REGS, LLC*, 2011 WL 1235688, at *3 (D. Colo.) (the court was "guided by pragmatism and efficiency" in exercising its discretion to grant motion to amend

rather than apply futility analysis).  The Court will not discuss Defendant's contentions advocating for summary judgment.

        *i.*      *Exhaustion of Administrative Remedies*

Defendant argues both Plaintiffs failed to timely exhaust their administrative remedies. (Doc. 98) at 11, 19.  Much of Defendant's argument relies on declarations and thus, the Court cannot determine whether Plaintiffs failed to timely exhaust their remedies.  *See id.* at 12–13, 19–20.  Further, the remaining evidence does not conclusively provide that Plaintiffs failed to timely exhaust.  For example, (Doc. 98-7) states Pippen was given a 60-day extension, "which extended the pre-complaint process."  Moreover, that same document states that Pippen received a "Notice of Right to File (NTRF) a Formal Complaint of Discrimination on 29 May 2024" despite extensions and alleged untimeliness.  (Doc. 98-7) at 1.  Therefore, the Court cannot conclude, based on the information provided by Defendant, that Plaintiffs failed to timely exhaust their administrative remedies.

        *ii.*     *Supplemental Retaliation Claims*

Next, Defendant argues Plaintiffs' supplemental retaliation claims fail pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. 98) at 13–14, 20–21.  Defendant contends that Plaintiff Atayde did not identify the specific pay raises, promotions or other opportunities she applied for and did not receive.  *Id.* at 14.  The Court disagrees.  In the proposed Supplemental Complaint, Plaintiffs allege that "Ms. Donna B. Strickland, Mr. Hankerson, and Col. Mitchell of the chain of command over Plaintiff Atayde did not provide career promotion opportunity to Plaintiff Atayde for the GS/0260/12 permanent position at the WSMR EEO Office."  (Doc. 95-2) at 12.  The Court determines that the description provided by Plaintiff is adequate.  Defendant also argues that the proposed Supplemental Complaint fails to allege the causal connection

between non-selection and protected activity, as required to prove a retaliation claim. (Doc. 98) at 14. However, Plaintiff Atayde alleges that she was denied promotional opportunities "due to her race and protected activities." (Doc. 95-2) at 11. Thus, the allegations, accepted as true, state a causal connection between non-selection and her protected activity.

Defendant makes a similar argument as it relates to Plaintiff Pippen's termination from service. (Doc. 98) at 21. Again, the Court finds that Plaintiff Pippen states a plausible claim for retaliation, in particular a causal connection between his termination and protected activity. Pippen alleges that Mr. Hankerson and Col. Mitchell informed him of his termination, (Doc. 95-2) at 20, and that both were aware and had knowledge of his race and protected activity, (Doc. 95-2) at 19. This allegation, accepted as true and in light most favorable to the plaintiff, sufficiently states a causal connection between his termination and protected activity. The fact that Pippen does not know exactly who made the decision to terminate his employment at this time does not mean the allegation would not survive a motion to dismiss.

iii.    *Constructive Discharge*

Defendant next argues that Plaintiff Atayde's constructive discharge claim is futile because she did not exhaust her claim. (Doc. 98) at 16. Defendant suggests that a constructive discharge claim is a discrete discriminatory act which must be exhausted. *Id.* at 17. Defendant is mistaken. Atayde is not bringing a claim for constructive discharge or wrongful termination. Instead, Atayde is alleging her constructive discharge was a form of retaliation and a result of the hostile work environment in the office. (Doc. 95) at 2, 5.

iv.    *Supplemental Hostile Work Environment Claim*

Finally, Defendant argues Plaintiffs' supplemental hostile work environment claim is futile because it would not survive a motion to dismiss under Rule 12(b)(6). (Doc. 98) at 22.

6

The Court agrees to the extent Plaintiffs allege a racial hostile work environment claim. To state a hostile work environment claim based on race, a plaintiff must show "that under the totality of the circumstances (1) the harassment was pervasive or severe enough to alter the terms, conditions, or privilege of employment, and (2) the harassment was racial or stemmed from racial animus." *Chavez v. New Mexico*, 397 F.3d 826, 831–832 (10th Cir. 2005) (quoting *Bolden v. PRC Inc.*, 43 F.3d 545, 551 (10th Cir. 1994)). Here, the allegations in the proposed Supplemental Complaint do not appear to stem from race, but instead, from this pending lawsuit. *See* (Doc. 95-2) at 21–25. Thus, the Court agrees that Plaintiffs' supplemental claim for racially based hostile work environment is futile and not relevant to the existing hostile work environment claim. The Court, however, will allow the proposed facts to support Plaintiffs' retaliation claim for filing this lawsuit.

### C. Prejudice

Finally, Defendant argues the Army would be unduly prejudiced if Plaintiffs were granted leave to file because discovery closed over a year ago. Defendant contends the "new factual allegations in the proposed Supplemental Complaint are unrelated to any of the incidents at issue in Plaintiffs' Original Complaint." (Doc. 98) at 24. The Court disagrees.

First, Defendant has forgotten the multiple extensions already granted by this Court, in which almost all have been at the request of Defendant or jointly filed. *See* (Doc. 86) at 2–3. It appears that this would be the first time an extension has been granted at the request of Plaintiffs only. Second, while discovery may have closed over a year ago, that year included a six month stay granted at the request of Defendant in which the Court did not allow any pleadings to be filed. (Doc. 94). Thus, the Court is unpersuaded that another extension and supplementation would unduly prejudice Defendant. That is not to be mistaken with a finding of no prejudice.

The Defendant will suffer some degree of prejudice as additional discovery will be necessary and, summary judgment motions will need to be refiled. The Court, however, does not find that Defendant will be *unduly* prejudiced, as the summary judgment deadline had not passed at the time Plaintiffs filed their Motion and the trial date had been vacated. *Id.* Further, the Court determines that fully adjudicating this case on the merits and in one single comprehensive proceeding is not prejudicial to Defendant. This is because the added facts could induce another lawsuit, meaning Defendant would have to do additional discovery regardless.

III.    *Conclusion*

For the reasons discussed above, Plaintiffs' Motion, (Doc. 95), is granted in part and denied in part. The Court will allow Plaintiffs leave to supplement their complaint; however, it will not allow Plaintiff to supplement with any facts that took place before November 29, 2021, the inception of this lawsuit. Additionally, the Court will not allow Plaintiffs to supplement their hostile work environment claim based on race. Instead, the Court will allow those factual allegations to support Plaintiffs' retaliation claim. Because this Court grants Plaintiffs leave to file their Supplemental Complaint, the Court will set new scheduling deadlines. Defendant's pending Motions for Summary Judgment, (Docs. 103–04), are now moot as well as (Docs. 114, 125).

IT IS SO ORDERED.

/s/_____
KENNETH J. GONZALES[2]
CHIEF UNITED STATES DISTRICT JUDGE

_____

[2] Please note that this document has been electronically filed. To verify its authenticity, please refer to the Digital File Stamp on the NEF (Notice of Electronic Filing) accompanying this document. Electronically filed documents can be found on the court's PACER public access system.